IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ANDRE JACKSON,

                Plaintiff,                OPINION AND ORDER

    v.

                                          20-cv-917-wmc

VERNON COUNTY, and
CAPTAIN CHARLES JACOBSEN,

                Defendants.

*Pro se* plaintiff Andre Jackson, an inmate at New Lisbon Correctional Institution, is proceeding against defendants on a conditions of confinement claim. Since the court issued its leave to proceed order on February 28, 2022 (dkt. #20), Jackson has filed two motions to amend (dkt. ##22, 35), attaching to each motion a proposed amendment to his amended complaint (dkt. ##23, 36). In the first motion, Jackson seeks to revive his access to courts claim on which the court denied him leave to proceed, and in the second, he seeks to add new defendants to his conditions of confinement claim.[1] Jackson has also filed a motion to strike defendants' affirmative defenses. (Dkt. #37.) For the following reasons, the court will allow Jackson to proceed on an access-to-courts claim, but deny his other motions.[2]

---

[1] Going forward, Jackson should not file multiple separate amendments to his complaint that "incorporate" allegations from prior pleadings. If Jackson seeks to amend his complaint again, he must file a new document that completely replaces the operative complaint, listing all defendants and alleging all necessary facts in one document, so if his request to amend is granted, that document will serve as the operative complaint in this lawsuit.

[2] Even if the court grants plaintiff leave to file a proposed amendment, the Prison Litigation Reform Act requires that the court screen claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted or seek money damages from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A.

OPINION

I. **Access to courts claim (dkt. #22)**

To begin, Jackson seeks to revive his access-to-courts claim.[3] In support, he alleges that, due to overcrowding, he was transferred from Dodge Correctional Institution to the Vernon County Jail on September 16, 2019, and remained there for 120 days. On October 1, 2019, defendant Captain Charles Jacobsen served Jackson with a petition for dissolution of marriage that had been filed in Winnebago County Circuit Court in Rockford, Illinois. Jackson had until October 24 to file an appearance form and an answer, or he would risk default judgment against him.

That same day, Jackson requested to use the law library to research Illinois state law on spousal support and marital property, and prepare his answer to the petition. Jackson was told, however, that the jail did not have a law library due to cost, any personnel to provide legal advice, or any Illinois state law resources. A guard brought Jackson to a holding cell with a table and chair, and six Wisconsin statute books from 2011-12. That guard then offered Jackson an internet-enabled laptop to conduct online research, but Jacobsen denied that request, as well as Jackson's request to transfer back to Dodge to access the prison's law library. And while Jacobsen advised Jackson to contact a Department of Corrections ("DOC") social worker for legal assistance, neither he nor jail staff would provide Jackson with any contact information.

On October 21, 2019, Jackson received an amended petition with a new answer

---

[3] In addressing Jackson's proposed amendments, the court reads the allegations generously, resolving ambiguities and drawing reasonable inferences in Jackson's favor. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

deadline of November 15. Jackson alleges that because Jacobsen "blocked" him from litigating his divorce, he was unable to contest his wife's request for certain marital property and spousal support. (Dkt. #23 at 4.)

Although the question is close, the court will allow Jackson to proceed against Jacobsen on this claim. Certainly, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Moreover, the right of access to courts for prisoners is not unlimited. To succeed on an access-to-courts claim, Jackson must show that he suffered an "actual injury" by being "impeded" in bringing a non-frivolous claim regarding his criminal conviction, sentence, or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 353-55 (1996); *see also Marshall*, 445 F.3d at 968 (construing *Lewis* to "limit[ ] right of access to the courts to prisoners' ability to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement"). Jackson does not allege that he was unable to litigate any of those types of claims. *See, e.g.*, *Spears v. El Dorado Cnty. Cts.*, No. 2:16-cv-2655-DMC-P, 2019 WL 3202802, at *4 (E.D. Cal. July 16, 2019) (denying inmate leave to proceed on a "claim that he was denied access to courts during his divorce proceedings and family law matters related to his children and assets"). However, the Seventh Circuit has explained that the right to access the courts also protects "the right to file other civil actions in court that have a reasonable basis in law or fact" without "undue interference." *Snyder v. Nolen*, 380 F.3d 279, 290-91 (7th Cir. 2004). Here, Jackson alleges not only that legal resources were inadequate at the jail, but also that Jacobsen refused to allow him to use an available laptop to conduct online research, and

3

did not provide contact information for a social worker who could have helped Jackson. Because these allegations merit further factual development at this very early stage, the court will, with some skepticism, allow Jackson to proceed on this claim against Jacobsen.

**II. Conditions of confinement claim (dkt. #35)**

Jackson also seeks to add Deputy Sheriff Nathan Campbell and Sheriff John Spears as defendants to his conditions of confinement claim on which he is already proceeding, but his allegations are insufficient. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("[l]eave to amend need not be granted, however, if it is clear that any amendment would be futile.")  Briefly, Jackson alleges in his amended complaint that he suffers from high blood pressure and "cardiovascular ailments" made worse by physical and mental stress. (Dkt. #13 at 7.)  However, the Vernon County Jail allegedly lacks adequate exercise and recreation facilities, and Jackson was allegedly restricted to his cell block and a cramped day room for four months while housed there.  As a result, Jackson alleges that his high blood pressure and mental health grew steadily worse from the lack of exercise, requiring medical treatment, and that Jacobsen and other jail officials were aware of the problem but took no action.  The court allowed Jackson to proceed on this claim against Jacobsen for allegedly failing to take corrective action, and against Vernon County based on allegations suggesting that the jail was following a policy or practice of restricting inmates to their cell blocks without opportunity for exercise to the detriment of inmate mental and physical health.  (Dkt. #20 at 7-8.)

To these allegations, Jackson now adds that he submitted a written request in "late October 2019" for a copy "of the contract between Vernon County Jail and Department

of Corrections."[4] (Dkt. #36 at 2.) Jackson alleges that he wanted the contract to learn more about the jail's obligations with respect to housing state prisoners, "more elaboration in depth to policy 108.13," and what penalties the Vernon County Board could impose on a party to the contract for disregarding it. (*Id.*) However, Campbell denied Jackson's request, and Jackson's request for reconsideration, advising Jackson to file a writ of mandamus in state court. Jackson did so, but the complaint does not indicate whether that action is ongoing, or, if concluded, what the result was.[5]

Jackson cannot proceed against either proposed defendant. As for John Spears, the proposed amendment to the complaint contains no specific allegations against him. Under § 1983, a defendant cannot be liable for the actions of other prison officials simply because he or she is a supervisor. *See Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (rejecting § 1983 actions against individuals merely for their supervisory role of others). Rather, plaintiff must allege sufficient facts showing that Spears personally caused or participated in a constitutional deprivation to demonstrate liability under § 1983. *See Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) ("individual liability under § 1983 requires personal involvement in the alleged constitutional violation") (citation omitted); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (to be liable, a supervisory defendant

---

[4] The Vernon County Jail, according to Jackson, is a state-local shared correctional facility. Under Wisconsin law, the DOC can "contract for the establishment and operation of state-local shared correctional facilities" to which "[i]nmates from Wisconsin state prisons may be transferred." Wis. Stat. § 301.14. These shared facilities "shall be prisons under s. 302.01." *Id.*

[5] Although Jackson provides two Vernon County Circuit Court case numbers and a case name, the court was unable to locate any public docket information for either case via Wisconsin Circuit Court Access, http://wcca.wicourts.gov.

"must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye"). Without any specific allegations against Spears, he is subject to dismissal. To the extent Jackson is seeking to assert a claim against Spears in his official capacity, that is practically speaking the same as a claim against Vernon County itself, for which the court has already granted Jackson leave to proceed. *See Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001) ("Official capacity suits are actions against the government entity of which the official is a part."); *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) ("Grieveson's claims against the Sheriff in his official capacity are treated as claims against Marion County itself.").

That leaves Campbell, who is also subject to dismissal because Jackson's allegations concerning Campbell only reflect the existence of a potential discovery dispute between the parties. As far as the court can tell, Jackson is suggesting that Campbell refused to provide Jackson with evidence that could support his claims, not that he was involved in the alleged constitutional violation, and this dispute may still be pending in state court. As noted above, without allegations of personal involvement in the alleged violation, Jackson cannot proceed against Campbell as a defendant to this claim. However, Jackson can request information he needs to prove his claim once discovery begins in this matter, and, if necessary, file a motion to compel after conferring with defendants if he believes they are not complying with appropriate discovery requests .[6]

---

[6] To the extent Jackson raises these allegations in anticipation of defendants renewing their motion for summary judgment on exhaustion grounds, which the court denied without prejudice to its renewal after Jackson's pending motions to amend were resolved, Jackson can make his arguments in an opposition brief. (Dkt. ##29, 38.)

### III. Motion to strike affirmative defenses (dkt. #37)

Finally, the court will also deny Jackson's motion to strike all 32 of defendants' affirmative defenses. Under Federal Rule of Civil Procedure 12(f), the court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous material." The Seventh Circuit has recognized that affirmative defenses are "subject to all pleading requirements of the Federal Rules of Civil Procedure." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Ordinarily, this requires that the pleading party set forth a "short and plain statement" of the defense. *Id.* (citing Fed. R. Civ. P. 8(a); *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 737 (N.D. Ill. 1982)). The court is generally sympathetic to the *pro se* plaintiff who, in receiving an answer with a long list of affirmative defenses, seeks more certainty. However, except in extraordinary circumstances, motions to strike are generally a pointless exercise for the parties and the court, and "will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991).

Although Jackson asks the court to strike all of the affirmative defenses, he makes a specific argument with respect to only the first, which is that his amended complaint fails to state a claim upon which relief may be granted. (Dkt. #27 at 4.) Jackson maintains, with reason, that "failure to state a claim" is technically not an affirmative defense. *See Oregon Potato Co. v. Kerry Inc.*, No. 20-cv-92-jdp, 2020 WL 4586401, at *2 (W.D. Wis. Aug. 10, 2020) (explaining that "failure to state a claim" is not an affirmative defense and granting motion to strike). The court could strike it, but Jackson does not explain how

7

this defense is prejudicial or how striking it would streamline the case. *See Illinois Tool Works Inc v. ESAB Grp., Inc.*, No. 16-C-201, 2016 WL 8224331, at *1 (E.D. Wis. Sept. 13, 2016) ("To warrant court intervention, the offending defense must give rise to some kind of prejudice, such as actual confusion, or it must at a minimum be shown how striking the matter would streamline the case. Otherwise courts are being asked to act as pleadings editors rather than as arbiters of legitimate disputes."). Defendants will presumably file a dispositive motion if the amended complaint truly fails to state claim, "at which time the matter will crystalize into a bona fide dispute ripe for the court to adjudicate." *Id.*

As for the remaining 31 affirmative defenses, the court will not strike those either. Jackson generally states that they are all "tersely worded," "formulary," "conclusory," and "clearly" insufficient. (Dkt. #37 at 2-3.) But "[a]s the moving party, plaintiff [has] the burden to show 'that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial.'" *Pope v. Espeseth, Inc.*, No. 15-cv-486-jdp, 2016 WL 1715206, at *1 (W.D. Wis. Apr. 28, 2016) (quoting *Kaufman v. McCaughtry*, No. 03-cv-27, 2003 WL 23095960, at *1 (W.D. Wis. May 22, 2003)). Since Jackson has not shown with any specificity that any of these affirmative defenses are patently meritless or unduly prejudicial, he has not met his burden and the court will not undertake it for him. Moreover, a number of these defenses present questions of law (such as damages limitations and various immunity doctrines), and/or will depend on facts that will be the subject of discovery, so the court will not strike them even if they are stated in plain terms. *See Ivanov v. Nyhus*, No. 14-cv-382-jdp, 2014 WL 5307936, at *3 (W.D. Wis. Oct. 16, 2014) (declining to strike an affirmative defense that

8

as plead might not meet the requirements of Rule 8 and advising that plaintiffs "can propound a contention interrogatory to lock defendants into their position"); *see also Free Range Presents Dallas, LLC v. Fort Investments LLC*, No. 18-cv-104-wmc, 2018 WL 6441017, at *10-11 (W.D. Wis. Dec. 7, 2018) (opting not to strike affirmative defenses that negate the elements of the plaintiff's claims).

The court will therefore deny Jackson's motion to strike, but in doing so notes that it often sees answers asserting a slew of affirmative defenses. Lawsuits, though, often shift as more information comes to light, and affirmative defenses will be abandoned, amended, and refined accordingly -- most are never developed and eventually withdrawn. If Jackson wants more certainty, he can force defendants to elaborate on or withdraw their defenses through requests for admission or interrogatories, or, if necessary, as part of a summary judgment motion. Absent a good faith basis to persist in their pleading, defendants should drop them.

ORDER

IT IS ORDERED that:

1) Plaintiff Andre Jackson's first motion for leave to amend (dkt. #22) is GRANTED. Plaintiff is GRANTED leave to proceed against defendant Jacobsen on a First Amendment access-to-courts claim.

2) Plaintiff's second motion for leave to amend (dkt. #35) is DENIED.

3) Plaintiff's motion to strike defendants' affirmative defenses (dkt. #37) is DENIED.

Entered this 29th day of April, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge