IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDRE JACKSON,

                Plaintiff,

v.                                           OPINION and ORDER

VERNON COUNTY and                     20-cv-917-wmc
CAPTAIN CHARLES JACOBSEN,

                Defendants.

---

*Pro se* plaintiff Andre Jackson, a state prisoner, brought this action under 42 U.S.C. § 1983 to challenge the conditions of his confinement at the Vernon County Jail. Defendants filed two motions for summary judgment, arguing that Jackson failed to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). (Dkt. ##29, 43, 48.) For the following reasons, the court will grant defendants' motions for summary judgment.

BACKGROUND

Upon court order, Jackson filed an amended complaint. (Dkt. #13.) Jackson alleges that he is a state prisoner who, due to overcrowding, was transferred to the jail pursuant to a contract with the Wisconsin Department of Corrections (DOC). (*Id.* ¶ 9.) Jackson bases his claims on events that occurred at the jail. Jackson was incarcerated at the jail from September 16, 2019, to February 3, 2020. (*Id.* ¶¶ 28, 31.) Jackson was incarcerated at New Lisbon Correctional Institution when he filed this action. (Dkt. #1 at 1.)

The court allowed Jackson's amended complaint to proceed on an Eighth Amendment claim for inadequate recreation and exercise against defendants Jacobsen and Vernon County. (Dkt. #20 at 5-9.) The court denied Jackson leave to proceed on any other claim. (*Id.* at 9.)

Jackson filed a motion to amend. (Dkt. #22.) Defendants moved for summary judgment, arguing that Jackson failed to exhaust his Eighth Amendment claim. (Dkt. ##29, 34.) Jackson filed a second motion to amend. (Dkt. #35.) The court denied defendants' motion for summary judgment without prejudice pending its resolution of the motions to amend and another motion. (Dkt. #38.)

The court granted Jackson's first motion to amend, allowing him to proceed on a claim that Jacobsen violated his right to access the courts. (Dkt. #39 at 2-4, 9.) The court denied Jackson's second motion to amend and motion to strike defendants' affirmative defenses. (*Id.* at 9.)

Defendants moved for summary judgment, arguing that Jackson failed to exhaust his access-to-courts claim. (Dkt. ##43, 44.) Defendants also renewed their first motion for summary judgment. (Dkt. #48.) Jackson filed a single response to the motions for summary judgment. (Dkt. ##46, 51.) Defendants filed replies to support their motions for summary judgment. (Dkt. ##47, 54.)

DISCUSSION

Under the PLRA, "[a]n inmate complaining about prison conditions must exhaust administrative remedies before filing suit." *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). "Exhaustion requires complying with the rules applicable to the grievance process at the inmate's institution." *Id.*; *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). The PLRA's exhaustion requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Failure to exhaust requires dismissal of

2

a prisoner's case without prejudice. *Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022); *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

The jail has a grievance procedure. (Dkt. #32 ¶ 10; Dkt. #32-6 at 22.) "An inmate request must be submitted and replied to before a grievance can b[e] filed." (Dkt. #32-6 at 22.) An inmate may then submit a grievance application within seven days of the event being grieved. (*Id.*) The jail's sergeant "will review the grievance and will reply in writing to the inmate with his findings." *Id.* If the inmate is dissatisfied with the sergeant's findings, he may use an appeal process that starts with appealing to the jail administrator within seven days. *Id.* If a DOC prisoner is transferred to "a contracted facility, the inmate shall file the complaint with the institution where the issue arose." Wis. Admin. Code DOC § 310.07(9).

Prisoners are only required to exhaust administrative remedies that are available to them. *Ross v. Blake*, 578 U.S. 632, 642 (2016). "[A]n administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. Also, an administrative procedure is unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* at 643-44. Finally, an administrative procedure is unavailable if prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Here, a reasonable factfinder could only conclude that Jackson did not exhaust administrative remedies. Jackson filed only one grievance at the jail. (Dkt. #32-4.) But that grievance was about allegedly cold temperatures at the jail. *Id.* Jackson did not file a grievance about the lack of recreation and exercise or denial of court access. Jackson does not dispute that he received the Jail's grievance procedure. (*See* dkt. #32-7.) Nor does Jackson dispute

3

that his filing of a formal grievance shows that he knew about the procedure and could use it. (*See* dkt. #30 ¶ 20.)

Jackson filed several general inquiries and medical requests at the jail. (Dkt. ##32-2, 32-3.) Jackson does not expressly mention his alleged lack of recreation and exercise in any of these documents. (*See id.*)

Jackson complains about his right to access the courts in a general inquiry. (Dkt. #46-1.) In response, Jacobson wrote: "The [DOC] told us . . . that any inmate who is having issues with their legal defense should write to the DOC Social Worker. That person will then assist in whatever way they can." (*Id.*) Jackson also filed a general inquiry in which he asked for the DOC's contract with the Jail. (Dkt. #46-2.) Jackson asked for the contract because he wanted to investigate or substantiate his claims regarding lack of recreation and exercise and court access. (*See* dkt. #46 at 2.) Matthew Hoff, a jail official, told Jackson he would speak with him about the request. (Dkt. #46-2 at 1.) According to Jackson, Hoff "came to see [Jackson] on many occasions where Mr. Jackson tried to resolve the matters verbally concerning access to court and recreation." (Dkt. #46 at 2.) Jackson also filed a public records request with the Vernon County Sheriff's Office for the contract, along with a mandamus petition in state court. (Dkt. ##46-3, 46-4, 46-5, 46-6, 46-7, 46-8, 46-9.) Jackson states that he "tried to resolve his concerns informally . . . which were related to ongoing concerns he was having with respect to the conditions of his confinement not discreate events." (Dkt. #46 at 3.)

Jackson contends that, through these actions, he notified Jail officials of his claims. (*See id.* at 3-4.) Jackson also contends that his general inquiries and public records requests were "decided on the merit[s] without rejection on procedural grounds." (*Id.* at 4.) Thus, Jackson contends that he exhausted administrative remedies. (*See id.* at 3-4.) Jackson cites the

4

following cases to support this contention: (1) *Maddox v. Love*, 655 F.3d 709 (2011); *Turley v. Rednour*, 729 F.3d 645 (7th Cir. 2013); and (3) *Matthews v. Mahoney*, No. 19-CV-991-WMC, 2022 WL 2072853 (W.D. Wis. June 9, 2022).

For analytical ease, the court assumes that Jackson's general inquiries about inadequate court access and the Jail's contract with the DOC were "inmate request[s]" under the Jail's grievance procedure. (*See* Dkt. #32-6 at 22.) But the grievance procedure requires prisoners to file a formal grievance once an inmate request has been "submitted and replied to." *See id.* The evidence shows that prison officials responded to Jackson's general inquiries. (Dkt. ##46-1, 46-2.) Jackson could have, and ought to have, filed a grievance after receiving responses to his general inquires.

Although Jackson makes no such argument, one might contend that prison officials led Jackson to believe that he did not have to file a grievance based on their responses to his general inquires. In his response to Jackson's general inquiry about lack of court access, Jacobson advised him to contact a DOC social worker and said that that person would "assist in whatever way they can." (Dkt. #46-1.) In response to his general inquiry about the contract, Hoff and Jacobson responded that the contract required Jackson to follow the Jail's rules and contained provisions about inmate trust accounts. (*See* dkt. #46-2 at 1.) Jacobson added that any other concerns about the handling of Jackson's money "should be directed to the Financial Specialist at the DCI Business Office." *Id.*

Regarding the availability of administrative remedies, there is nothing misleading about these responses. They do not state or indicate that the formal grievance process was unavailable or that Jackson would fulfill it by taking the actions suggested in the responses. *Cf. Davis v. Mason*, 881 F.3d 982, 986 (7th Cir. 2018). Nor do they state or indicate that prison officials

5

assured Jackson that his "problem was being resolved." *Cf. Lanaghan v. Koch,* 902 F.3d 683, 688 (7th Cir. 2018). Indeed, Jackson states that, after his attempts to "resolve the matters verbally," Hoff advised him to file a public records request for the contract. (*See* dkt. #46 at 2.) In other words, there is no evidence that any prison official affirmatively led Jackson to believe that he did not have to use the grievance procedure. *Cf. Dixson v. Brown*, No. 2:21-CV-00169-JPH-MG, 2022 WL 541196, at *2-3 (S.D. Ind. Feb. 22, 2022) ("[A]dministrative remedies are primarily unavailable to inmates where 'affirmative misconduct' prevents prisoners from pursuing administrative remedies."). If, for whatever reason, Jackson formed the subjective belief that he did not have to use the grievance process, he should have "erred on the side of exhaustion and timely initiated the formal grievance process." *See Williams v. Rajoli*, 44 F.4th 1041, 1046 (7th Cir. 2022) (alteration adopted); *cf. Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) ("No one can *know* whether administrative requests will be futile; the only way to find out is to try."). No reasonable factfinder could conclude that the grievance procedure was unavailable to Jackson.

Jackson's case citations are readily distinguishable. In each case, the prisoner filed a grievance. *See Maddox*, 655 F.3d at 721 ("Maddox's grievance was rejected on the merits at every stage of review without any indication from prison officials that it was procedurally deficient."); *Turley*, 729 F.3d at 650 ("Turley's February 2009 grievance, which was pursued to a final decision by the Director, suffices to exhaust the claims challenging lockdown policy."); *Mahoney*, 2022 WL 2072853, *1-2. Here, however, Jackson never filed a grievance. This is not a case where the defendants argue that the plaintiff's claims are procedurally deficient even though the defendants declined to apply the procedural bar at the institutional level and denied the claims on the merits. Jackson's contention that his general inquiries and related documents

were "decided on the merit[s] without rejection on procedural grounds" (dkt. #46 at 4), overlooks that he never filed a grievance. Because he did not file a grievance, defendants did not reject his claims on the merits or otherwise.

Jackson contends that he is entitled to an evidentiary hearing under *Pavey v. Conley*, 528 F.3d 494 (7th Cir. 2008), though he does not state what evidence he would develop or what facts are necessary to resolve. (Dkt. #46 at 5-6.) A *Pavey* hearing is unnecessary. When exhaustion involves a genuine dispute of material fact, the court may, as factfinder, hold a *Pavey* hearing. But there are no genuine disputes of material fact here. The evidentiary record is complete; there is no indication that a *Pavey* hearing would produce more material evidence. Based on the parties' largely undisputed evidence, a reasonable factfinder could only conclude that Jackson did not exhaust his available administrative remedies. The court declines to hold a *Pavey* hearing.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment (dkt. #43), and renewed motion for summary judgment (dkt. ##29, 48), are GRANTED. This case is dismissed without prejudice for failure to exhaust administrative remedies.

2. The clerk is directed to enter judgment accordingly and to send plaintiff a copy of this order.

Entered November 23, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge